**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5378-16

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAMAR RANDLEMAN,
a/k/a LAMAR J. RANDELMAN,

    Defendant-Appellant.

_____

> Argued October 13, 2020 – Decided December 30, 2021
>
> Before Judges Hoffman, Suter and Smith.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment. No. 14-09-0787.
>
> Adam W. Toraya argued the cause for appellant.
>
> Milton S. Leibowitz, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Milton S. Leibowitz, on the brief).
>
> Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

SMITH, J.A.D.

After a jury trial, defendant Lamar Randleman was convicted of first-degree carjacking and third-degree theft. He was sentenced to twenty-five years imprisonment. On appeal, defendant contends trial judge erred by: excluding certain evidence prior to trial; rejecting defendant's recommended supplemental voir dire question on racial bias; improperly giving a flight instruction to the jury; and imposing an excessive sentence. We affirm for the reasons set forth below.

## I.

### A.

On March 31, 2014, Patricia Fitzpatrick returned home after grocery shopping at about 1:00 p.m. She took groceries out of her trunk and put them on the kitchen counter, then put a collar on her dog and went back outside. Once outside, Ms. Fitzpatrick saw defendant standing near the back of her car. He closed the trunk and approached Ms. Fitzpatrick. Defendant took her car keys, kicked the dog, and pushed her into the shrubbery. After taking the keys, defendant got in the car and sped away. Ms. Fitzpatrick could not identify the person who stole her car with any certainty.

A-5378-16

Ms. Fitzpatrick's neighbor, David Reich, heard screaming and the dog barking, causing him to look out the window. After seeing the carjacking, he got dressed and told his wife to call 9-1-1. He ran outside and asked Ms. Fitzpatrick which car was taken, and which way the carjacker went. As a result, Mr. Reich got in his car and headed towards Route 22, looking for Ms. Fitzpatrick's car. Eventually he saw a person who looked like defendant driving Ms. Fitzpatrick's car at a high rate of speed, and he followed it onto Route 22. The carjacker exited Route 22 and pulled into a store parking lot. While in the car, Mr. Reich called 9-1-1 and told the dispatcher that he was following Ms. Fitzpatrick's car.

Mr. Reich followed defendant into a store parking lot and saw defendant park. Mr. Reich also pulled into the parking lot and parked his car within three parking stalls of where defendant had parked the stolen car. Mr. Reich saw defendant exit the car, toss something over a fence that separated the parking lot from a neighboring gas station, and then walk between two cars towards the gas station. Mr. Reich then saw Officer Michael Pasquale pull into the same lot in his patrol car. He heard Officer Pasquale command defendant to stop and then watched defendant run between him and the officer. Mr. Reich saw Officer

3

Pasquale attempt to dive and tackle defendant, miss, and then begin to pursue defendant on foot.

Officer Pasquale testified that he observed the stolen car just before it reached the parking lot, and he entered the parking lot through a different entrance. Officer Pasquale confronted defendant and ordered him to the ground, but defendant disregarded the order and ran. Defendant ran along the fence until he was able to slip through it onto the gas station property. Officer Pasquale pursued him on foot, knocking a section of fence down and chasing defendant into the gas station. Officer Pasquale testified on direct that he "never" lost sight of defendant, but he admitted on cross-examination he did not see defendant park and exit the stolen vehicle.

While Officer Pasquale chased defendant into the gas station, a dark Chevy Malibu sedan pulled into the gas station, and the passenger side door swung open. Defendant got into the car, which subsequently drove away at a high rate of speed. Officer Pasquale fired four shots from his service weapon into the Malibu. He later claimed to investigators that he feared for his life and that he believed that the driver of the Malibu was going to run him over.

Another officer, Corporal Thomas Norton, pursued the car in his marked vehicle. The car spun out of control making a turn and crashed into a curb,

4

where it remained disabled. Officer Norton blocked the driver-side door of the car with his patrol unit to prevent the driver from fleeing. He ordered the driver to turn off the car, and the occupants surrendered.

B.

On September 12, 2014, defendant was indicted for first-degree carjacking, N.J.S.A. 2C:15-2(a)(1), third-degree theft, N.J.S.A. 2C:20-3(a), as well as charge of fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2).

Prior to trial, the State and defendant each filed motions. The State sought to preclude evidence that Officer Pasquale fired four shots into the Malibu, striking the car in the passenger side door. Defendant moved to compel discovery of Officer Pasquale's personnel file, which contained information pertinent to his suspension from the police force at the time of trial.

The trial court heard argument on both motions. The State argued under N.J.R.E. 403 that the probative value of the testimony about the shooting and the physical evidence depicting where the bullets struck defendant's car was outweighed by the prejudice caused by introducing such evidence to the jury. The State argued the principal case was the carjacking, therefore evidence about shots fired at the gas station would be misleading and confusing to the jury.

5

The judge initially disagreed, finding the evidence relevant and probative to the defense case, remarking, "[s]o . . . Mr. Randleman's defense is[,] 'I didn't have the intent to flee. I was being shot at.'" When the State argued that the flight issue was not relevant to the N.J.R.E. 403 analysis, the court disagreed further. The judge stated that the shooting evidence went "to the heart of . . . defendant's due process rights to defend himself," and expressly stated that the evidence of Officer Pasquale unholstering his weapon and firing four shots at the Chevy Malibu was not inflammatory or confusing to the jury in light of the pending resisting arrest charge against defendant. The judge then stressed that his findings at that point in the argument were predicated upon the pending resisting arrest charge against defendant. The trial court expressly linked the admissibility of the shooting evidence to the flight element in the resisting arrest charge. [1]

The State elected to dismiss the resisting arrest charge. Once the State dismissed the charge, the judge immediately reversed course and excluded the shooting evidence. The court found that the State's dismissal of the resisting

---

[1] N.J.S.A. 2C:29-2(a)(2) reads in pertinent part as follows: "[A] person is guilty of a crime of the fourth degree if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest."

A-5378-16

arrest charge warranted a reversal of the N.J.R.E. 403 analysis he had just conducted.  The judge now found that, without the resisting arrest charge, evidence of the shooting created "overwhelming prejudice and confusion of the issues" under N.J.R.E. 403.  The judge concluded by stating, "evidence of the shooting does not come in."

The judge determined "evidence that Mr. Randleman . . . was fleeing law enforcement for purposes of consciousness of guilt . . . . [was] admissible." Defendant then objected to inclusion of a flight instruction for the jury, contending that the State had just dismissed the N.J.S.A. 2C:29-2(a)(2) charge, with its flight element, and the trial court excluded the shooting evidence due to the dismissal.  The judge overruled the objection.

The court next considered defendant's motion to compel discovery. Defendant sought Officer Pasquale's disciplinary file related to his suspension from duty by the police department.  The State turned over three investigative documents to the court for in-camera review.  The documents revealed that Internal Affairs was investigating a second officer for a hit and run incident involving a police vehicle.  According to the investigation, Officer Pasquale assisted the accused officer in failing to report the incident and concealing

damage to the police vehicle. The police department issued charges against Officer Pasquale and suspended him without pay.

After reviewing the documents in-camera, the court prohibited defendant from mentioning that Officer Pasquale was suspended from work without pay at the time of trial. The court explained since there was no formal finding in Officer Pasquale's disciplinary record that he was untruthful, defendant could not refer to his suspension during trial. The court found that the suspension "bears no relevance to any issues at trial, impeachment or otherwise," and allowing reference to the suspension would "invite rank speculation about the reasons for the suspension" and would distract the jury.

The judge found two statements by Officer Pasquale's fellow officers discoverable, as they were "potentially related to Officer Pasquale's character for untruthfulness . . . ." First, the judge permitted discovery of a statement by Sergeant Richard Latargia that Officer Pasquale tended to exaggerate, and that he did not accept what Officer Pasquale said as the truth. After listening to the sergeant's testimony, the judge found his comments on Officer Pasquale's truthfulness were not relevant because they referred to his off-duty activity. The judge noted that "Officer Pasquale's purported tendency to exaggerate in social settings is unrelated to his opinion to any issue at trial" and would "distract the

jury and present collateral issues that are unrelated to the determination of the defendant's guilt or innocence." The judge concluded Sergeant Latargia's opinion was inadmissible, but eventually allowed another officer's lay opinion into evidence: former officer Adam Foti stated that he had problems determining when Officer Pasquale was being truthful or untruthful regarding on-duty work.

At the commencement of voir dire, defendant proposed the following supplemental question:

> Would the fact that the victim and the defendant in this matter are not of the same race or social economic status affect your ability to be fair and impartial?

The State objected to the proposed question, and the trial judge rejected defendant's application, finding "no allegation of bias in [the] case." Upon commencement of the jury selection process, the judge gave its preliminary instruction to the jury consistent with the standard language contained within the model jury charges.[2] The trial judge proceeded to conduct a thorough voir dire, using the standard questions required by Administrative Directives #21-06 and #4-07. After the voir dire was completed, neither the State nor defense objected.[3]

---

[2] Model Jury Charges (Criminal), "Preliminary Instructions To The Jury" (rev. May 15, 2014).

[3] Defendant raised this issue below in the form of a motion for new trial, which was denied by the trial judge on June 29, 2017.

C.

The case proceeded to trial. Defendant exercised his Fifth Amendment right not to testify. At the close of trial, the trial judge gave the standard model jury charge on flight with no deviation.

On April 26, 2017, the jury found defendant guilty of the remaining charges. The trial court sentenced defendant to twenty-five years for the carjacking conviction and a concurrent five years for the theft conviction.

On appeal, defendant raises the following issues:

POINT I:

THE COURT ERRED IN PRECLUDING THE DEFENSE FROM INTRODUCING EVIDENCE THAT OFFICER PASQUALE HAD UNHOLSTERED HIS WEAPON FIRED FOUR SHOTS AT DEFENDANT, AND THEN AFTERWARDS MADE INCONSISTENT STATEMENTS ABOUT THE SHOOTING IN HIS POLICE REPORT.

POINT II:

THE COURT ERRED IN ALLOWING THE JURY TO BE GIVEN A FLIGHT CHARGE AFTER THE COURT HAD PREVIOUSLY PRECLUDED THE DEFENSE FROM INTRODUCING EVIDENCE ABOUT OFFICER PASQUALE'S SHOOTING AT DEFENDANT.

POINT III:

THE COURT ERRED IN DENYING THE DEFENDANT'S REQUEST TO ADMIT EVIDENCE OF OFFICER PASQUALE'S CHARACTER FOR UNTRUTHFULNESS.

POINT IV:

THE COURT ERRED IN PRECLUDING THE DEFENSE FROM OBTAINING FULL DISCOVERY AND FROM QUESTIONING OFFICER PASQUALE ABOUT BEING ADMINISTRATIVELY SUSPENDED FROM THE POLICE DEPARTMENT.

POINT V:

THE COURT ERRED IN DENYING THE DEFENDANTS REQUEST TO ALLOW POTENTIAL JURORS TO BE ASKED ABOUT RACIAL BIASES AND DIFFERENT SOCIO-ECONOMIC STATUS

POINT VI:

THE CUMULATIVE ERRORS OF THE COURT DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL. (NOT RAISED BELOW)

POINT VII:

THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE

II.

A judge's decision to admit or exclude evidence is "entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment." State v. Brown, 463 N.J. Super. 33, 51 (App. Div. 2020) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). Although a trial court retains broad discretion in determining the admissibility of evidence, that "discretion is abused when relevant evidence offered by the defense and necessary for a fair trial

11

is kept from the jury." State v. R.Y., 242 N.J. 48, 65 (2020). We will reverse an evidentiary ruling only if it was "so wide of the mark that a manifest denial of justice resulted." State v. Gerena, 465 N.J. 548, 561 (App. Div. 2021) (quoting Brown, 170 N.J. at 147).

The Sixth Amendment to the Constitution of the United States and Article I, Paragraph 10 of our state Constitution guarantee an accused in a criminal case the right to confront adverse witnesses. State v. Duprey, 427 N.J. 314, 322 (App. Div. 2012) (citing State v. Guenther, 181 N.J. 129, 147 (2004)). "A defendant's right to confrontation is exercised through cross-examination, which is recognized as the most effective means of testing the State's evidence and ensuring its reliability." Ibid. The Confrontation Clause was not, however, "intended to sweep aside all evidence rules regulating the manner in which a witness is impeached with regard to general credibility." Guenther, 181 N.J. at 150 (citing Davis v. Alaska, 415 U.S. 308, 321 (1974) (Stewart, J., concurring)).

We address defendant's first two points together. Defendant argues that the trial judge erred by excluding evidence of the gas station shooting but allowing the flight charge to be given to the jury. Defendant argues that barring the shooting evidence hurt his case in two ways. First, it deprived defendant of his Sixth Amendment right to confrontation. Second, it denied defendant an

12

opportunity to suggest an alternative explanation for his flight from the gas station.

Regarding defendant's constitutional right to confrontation at trial, the record is clear that Officer Pasquale gave inconsistent testimony at trial about whether he saw defendant exit Ms. Fitzgerald's stolen vehicle in the parking lot. Initially he testified that he saw the defendant park and emerge from the car, but he admitted on cross-examination that defendant was already on foot by the time he arrived. Defendant had an absolute Sixth Amendment right to confront Officer Pasquale through cross-examination, and the officer's own testimony placed his credibility at issue. To further discredit him, defendant hoped to elicit testimony on the glaring contradictions between Officer Pasquale's version of events at the gas station shooting and the ballistic evidence recovered from the scene.

The record shows Officer Pasquale informed Internal Affairs that he feared for his life when the driver of the Chevy Malibu tried to run him over, and that is why he fired his weapon at the car four times. The record further shows that the four bullet holes in the Chevy Malibu were located in the passenger-side door, not the front of the vehicle, where a reasonable person might expect the bullet holes to be if the vehicle was in fact bearing down on

13

Officer Pasquale when he fired at it.  The officer's statement to investigators about why he fired on the car, combined with the physical evidence of where the car was struck, raised further credibility issues concerning Officer Pasquale.

However, we find no abuse of discretion in the judge's decision to bar the shooting evidence.  Defendant had ample opportunity to cross-examine Officer Pasquale on his conflicting testimony regarding when he first saw defendant, and defendant was also permitted to present to the jury evidence of the officer's reputation for untruthfulness.  The Confrontation Clause does not "sweep aside all evidence rules regulating the manner in which a witness is impeached with regard to general credibility."  Guenther, 181 N.J. at 150.  (citation omitted).  We are satisfied that defendant's Sixth Amendment right to confrontation was protected.

Regarding the flight instruction, defendant clings to the judge's original pre-trial analysis linking admissibility of the shooting to the flight element in N.J.S.A. 2C:29-2(a)(2).  Under this analysis, evidence of the shooting would have bolstered defendant's alternative explanation for fleeing the gas station – that he feared being shot by the pursuing officer – and damaged Officer Pasquale's credibility.  Nonetheless, the facts adduced at trial demonstrate two distinct incidents which warrant a flight charge to the jury.  The record shows Mr. Reich followed his neighbor's stolen car to the lot.  He had an opportunity

to make close observations of defendant as he emerged from Ms. Fitzgerald's Lexus just three parking spots away. Reich saw defendant toss the keys, and then take off running towards the gas station when Officer Pasquale arrived moments later. The jury had sufficient evidence from which to conclude that defendant fled Ms. Fitzpatrick's home in the stolen Lexus, and then fled Officer Pasquale on foot in the parking lot before he reached the gas station. On this record the judge properly exercised his discretion to charge flight to the jury.

Turning to defendant's third and fourth arguments, we discern no abuse of discretion in the trial judge's exclusion of certain testimony relating to Officer Pasquale's alleged character for untruthfulness as well as records relating to his suspension from the police department at the time of trial. The judge conducted a lengthy pre-trial hearing and made extensive findings supporting his reasons for limiting or excluding the evidence related to these issues. Discerning no clear error in judgment on the record, we defer. We note that the judge, after sifting through the police records in-camera, permitted testimony at trial regarding Officer Pasquale's reputation for untruthfulness. We see no basis to disturb the evidentiary decisions of the trial court on these issues and affirm. 463 N.J. Super. at 51.

Defendant next contends the judge erred in denying defendant's request to include a supplemental voir dire question designed to query jurors about any racial

15

or economic biases they may have had which could have influenced their ability to be fair and impartial jurors. Defendant posits that our decision in State v. Horcey[4] stands for the proposition that when a defendant is black and the victim is white, and the crime charged is one of violence, the trial court must permit a supplemental voir dire question to determine if prospective jurors harbor racial bias. Rather than an absolutist view of the decision, we take a more fact-sensitive, nuanced view, consistent with the concurring opinion by Judge Shebell, who stated, "[o]ur New Jersey Supreme Court has never required reversal for failure to ask a question regarding racial bias where the facts themselves do not give rise to some indication that there is a need for specific inquiry with respect to the racial views of the potential jurors." Horcey, 266 N.J. at 422 (citations omitted).

"Questions asked during voir dire are a matter of judicial discretion, the exercise of which 'will ordinarily not be disturbed on appeal.'" State v. Kelly, 302 N.J. Super. 145, 151 (App. Div. 1997), certif. denied, 156 N.J. 409 (1998) (affirming defendant's murder and robbery convictions despite trial court's refusal to question jurors about racial prejudice) (citations omitted). Nonetheless, "our courts encourage inquiry into racial bias if requested during voir dire, recognizing 'that jurors may be racially or ethnically biased against the defendant, even in the absence

---

[4] State v. Horcey, 266 N.J. Super 415 (App. Div. 1993).

of an explicitly racially divisive factual situation.'" Ibid. (quoting State v. McDougald, 120 N.J. 523, 553 (1990)).

In this case, there was a racial difference between the victim and the defendant and a request for an instruction that touched on racial prejudice. Moreover, defendant was charged with first-degree carjacking, a crime of violence. In Rosales-Lopez v. United States, 451 U.S. 182, 182-83 (1981), the United States Supreme Court noted, "federal trial courts must make such an inquiry when requested by a defendant accused of a violent crime and where the defendant and victim are members of different racial or ethnic groups." Ibid. Defendant urges us to reverse, citing our conclusion in Horcey that it was "reversible error for the trial judge to refuse a request to ask at least a threshold question about bias where there is racial disparity and defendant is charged with a crime of violence." Horcey, 266 N.J. Super. at 419-20. In a decision subsequent to Horcey, we declined to require reversal under similar circumstances. See Kelly, 302 N.J. Super. at 153.

We agree that the circumstances here required the trial judge to ask at least a threshold question about potential bias. However, consistent with Judge Schell's concurring opinion in Horcey, we reject the argument that a bright line rule commands reversal. A refusal to inquire about potential prejudice is an error of constitutional magnitude where racial issues are "inextricably bound up with the

17

conduct of the trial," <u>Horcey</u>, 266 N.J. Super at 418 (citing <u>Ristaino v. Ross</u>, 424 U.S. 589, 597 (1976)), or where there exists "substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case." <u>Ibid.</u> (citing <u>Rosales-Lopez</u>, 451 U.S. at 190). Even if the refusal to make such inquiry does not rise to the level of constitutional error, it constitutes "an abuse of discretion requiring reversal 'where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury.'" <u>Kelly</u>, 302 N.J. Super. at 152 (quoting <u>Rosales-Lopez</u>, 451 U.S. at 191).

Defendant does not contend that any of the jurors were tainted by racial prejudice, and there is no evidence in the record that this was the case. According to the judge's twenty-eight-page decision on defendant's motion for new trial, which contained an exhaustive statement of reasons for his decision on the voir dire question, the judge excused twenty-seven jurors for cause, the State exercised ten preemptory challenges, and defense exercised six preemptory challenges. The judge observed that the racial, ethnic, and gender composition of the deliberating jury appeared to consist of one Asian-American, three Latinos, three African-Americans, and five Caucasians. The panel appeared to the judge to be comprised of nine women and three men.

18

The record reveals no racially charged descriptions of defendant. The evidence presented was that of a straightforward carjacking in which a witness followed the defendant in the stolen car and was able to observe him park the car, discard the keys, and attempt to flee from police. Neither the crime itself nor the reactions of the victim and other witnesses suggested a racial motive for the robbery or the allegations against defendant. Compare State v. Harris, 156 N.J. 122, 237 (1998) (Handler, J. dissenting) (finding race was a central feature of the case "given the multiple racially motivated statements attributed to defendant," such as referring to the victim as a "white bitch" and that he had "knocked off some white girl," and the crime itself, which "appeared to have been racially motivated"), with Rosales-Lopez, 451 U.S. at 191-94 (finding no reversible error where neither the government's case nor the defendant's defense involved any allegations of racial or ethnic prejudice), and Ristaino, 424 U.S. at 597-98 (finding no constitutional issue where the circumstances did not "suggest a significant likelihood that racial prejudice might infect [defendant's] trial," simply due to the "mere fact that the victim of the crimes alleged was a white man and the defendants were [black]"). See also State v. Morton, 155 N.J. 383, 459-60 (1998) (rejecting the argument that failure to conduct voir dire into the venire persons' racial attitudes was reversible error where no evidence indicated that any juror was racially biased).

Horcey and Kelly both stand for the principle that where a defendant accused of a crime of violence against a victim of a different race asks the trial judge to question potential jurors about possible racial bias, the judge should make at least a threshold inquiry where the facts of the case warrant such action, and that the failure to do so constitutes an abuse of discretion. However, this record includes no evidence that the jurors or the trial were tainted by racial bias. As such we affirm the judge's refusal to pose the supplemental question on racial bias during voir dire, and decline to find that defendant was prejudiced.

Finally, defendant argues that his sentence of twenty-five years was "manifestly excessive," and that the sentencing judge failed to make specific findings in the record to support the sentence imposed. We disagree. At sentencing, the judge carefully reviewed the record, including the facts adduced at trial, as well as the pre-sentence report and defendant's extensive juvenile[5] and adult criminal history. The sentencing judge made findings and concluded that aggravating factors three, six, and nine were present on this record. The judge rejected defendant's argument that he neither caused nor threatened serious harm under mitigating factor

_____

[5] As a juvenile, defendant was waived to the Criminal Division on a charge of first-degree murder. He was ultimately convicted of aggravated manslaughter. He had completed a term of detention in Jamesburg and had been released at the time of the events recounted here.

20

one, and further concluded that no other mitigating factors applied. The judge found the aggravating factors outweighed the non-existent mitigating factors, and he imposed a term of incarceration. "In the end, the fundamental principle is that an appellate court should not second-guess a trial court's finding of sufficient facts to support an aggravating or mitigating factor if that finding is supported by substantial evidence in the record." State v. Cassady, 198 N.J. 165, 180-81 (2009) (internal quotations omitted).

We note there is competent, credible evidence in the record to support the trial court's findings, and we see no basis to substitute our judgment for that of the trial court. We do not find that defendant's sentence "shocks the judicial conscience." Id. at 184.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION